ATTORNEY FOR PETITIONER:

**JOHN W. DAVIS**
DAVIS & ROOSE
Goshen, IN

ATTORNEYS FOR RESPONDENT:

**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**ZACHARY D. PRICE**
DEPUTY ATTORNEY GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

Jun 28 2019, 4:24 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

GOSHEN PUBLIC LIBRARY OF )
ELKHART COUNTY, INDIANA, )
)
    Petitioner, )
)
        v. ) Cause No. 18T-TA-00011
)
DEPARTMENT OF LOCAL )
GOVERNMENT FINANCE OF THE )
STATE OF INDIANA, )
)
    Respondent. )

ON APPEAL FROM A FINAL DETERMINATION OF THE
DEPARTMENT OF LOCAL GOVERNMENT FINANCE

**FOR PUBLICATION**
**June 28, 2019**

WENTWORTH, Judge.

    The Goshen Public Library of Elkhart County, Indiana challenges the Department of Local Government Finance's (the "DLGF's") certification of its budget for the 2018 tax year. Upon review, the Court REVERSES the DLGF's final determination.

    Before proceeding further, the Court notes that the certified administrative record in this case lacked evidence material to the DLGF's final determination. As the reviewing Court, not the trier of fact, the Court considers only the evidence in the certified

administrative record.  See, e.g., Gary Cmty. Sch. Corp. v. Indiana Dep't of Local Gov't Fin., 15 N.E.3d 1149, 1150-51 (Ind. Tax Ct. 2014).  Indiana Code § 6-1.1-30-6 requires the DLGF to keep a public record of its proceedings and orders, and thus, a properly certified and attested copy of the records and orders in an appeal is "sufficient evidence in all courts or proceedings to prove an action, rule, or order of the [DLGF.]"  IND. CODE § 6-1.1-30-6 (2018).  Although prudence should prompt the parties to ensure that the proper record is certified to the Court,[1] the infirmities of the record in this appeal are also attributable to the broken procedural process governing DLGF administrative appeals.

The Court repeats the message written in a footnote nearly five years ago to reflect its considerable concern:

> The Court recognizes that the DLGF is hindered by the nature of its administrative appeals process because it does not employ a typical adversarial system.  Its process invites confusion over what the certified administrative record must contain, as here, and is susceptible to the parties failing to develop all relevant facts and legal arguments.  Indeed, Justice DeBruler of the Indiana Supreme Court has explained that the import of our adversarial system is to elicit all relevant facts and provide litigants with the opportunity to present the best legal arguments in support of their respective positions.  See State ex rel. Keller v. Criminal Ct. Marion Cty. Div. IV, 317 N.E.2d 433, 443 (Ind. 1974) (DeBruler, J., concurring and dissenting).  Accordingly, the DLGF must be aware of the dangers inherent in its administrative appeals process and strive to prevent them from occurring in the future.

Gary Cmty. Sch. Corp., 15 N.E.3d at 1151 n.3.

---

[1] Although the Library has filed various documents and information with the Court regarding its budgets for 2018 and years prior, that evidence was not included in the certified administrative record.  (Compare, e.g., Pet'r First Am. Pet.:  Appeal Final Determination Dep't Local Gov't Fin. ("Pet'r Pet."), Exs. A-I, O; and Pet'r Reply Br., App. Pet'r Reply Br. with Cert. Admin. R.)  Consequently, the Court may not consider the evidence.  See, e.g., Gary Cmty. Sch. Corp. v. Indiana Dep't of Local Gov't Fin., 15 N.E.3d 1149, 1150-51 (Ind. Tax Ct. 2014).

## BACKGROUND

On January 30, 2018, the DLGF issued a 1782 Notice to the Library that noted that the Library's 2018 proposed budget was not adopted because it was "over the maximum allowable limit for becoming a Binding Unit in the amount of $60[.]" (Cert. Admin. R. at 15.) The DLGF therefore reduced the Library's general fund, library improvement fund (LIRF), and property tax levy to the prior year's budget amount. (See Cert. Admin. R. at 15.)

On February 7, 2018, the Library appealed the 1782 Notice to the DLGF, claiming that the reductions were unwarranted because its 2018 proposed budget did not exceed the assessed value growth quotient (AVGQ) allowed by statute.[2] (See Cert. Admin. R. at 23-25.) (See also Cert. Admin. R. at 26-28.) Alternatively, the Library claimed that the reductions were improper because its 2018 proposed budget contained a correctable error in data (i.e., the inadvertent adoption of a budget of $3,342,399 rather than a budget of $3,342,339).[3] (See Cert. Admin. R. at 24, 28.)

On February 14, 2018, the DLGF denied the Library's appeal, explaining

> the reason that [the] DLGF continued the [Library's] 2017 budget was because your [proposed] budget was above the [AVGQ] for 2018, which requires an adoption of the budget by the county fiscal body. That action by the county fiscal body did not occur.
>
> After a thorough review by [the] DLGF['s] staff, the [DLGF] finds no mechanism under the law that will allow for a reversal of our initial decision to continue [your] 2017 budget. Therefore, [the] DLGF will

---

[2] Indiana's assessed value growth quotient (AVGQ) limits the amount by which a civil taxing unit's property tax levy can increase each year. See generally IND. CODE § 6-1.1-18.5-2 (2018) (amended 2019).

[3] The Library also claimed that the DLGF could "preserve[] . . . the benefits of its 2018 [proposed] budget and levy" by either using an alternative method to reduce its proposed budget or giving the Library the time to adopt a resolution that reduced its proposed budget. (See Cert. Admin. R. at 25.) The Library has not raised these claims, however, in its appeal to the Tax Court.

finalize the budget certifications for Elkhart County today.

(Cert. Admin. R. at 11.) Accordingly, that same day, the DLGF certified the 2018 Budget Order for Elkhart County, which incorporated the final budgets, tax rates, and tax levies for the Library and other taxing units within the county. (See Cert. Admin. R. at 30-94.)

On March 28, 2018, the Library initiated this original tax appeal. The Court conducted oral argument on October 23, 2018. Additional facts will be supplied when necessary.

## STANDARD OF REVIEW

The party challenging the propriety of the DLGF's final determination bears the burden of demonstrating its invalidity. See City of Greenfield v. Indiana Dep't of Local Gov't Fin., 22 N.E.3d 887, 891 (Ind. Tax Ct. 2014). Accordingly, the Library must show the Court that the DLGF's final determination is arbitrary and capricious, an abuse of discretion, contrary to law, or unsupported by substantial evidence. See id.

## LAW AND ANALYSIS

On appeal, the Library maintains that the DLGF's final determination that reduced its 2018 proposed budget is contrary to law and constitutes an abuse of discretion. (See Pet'r Br. at 14-22.) As a result, the Library asks the Court to reverse the DLGF's final determination and vacate its 2018 budget order. (Pet'r Br. at 22.)

## I. Contrary to Law

The Library contends that the DLGF's conclusion that its 2018 proposed budget exceeded the 2018 AVGQ is contrary to law for three reasons. First, the Library claims the DLGF has misconstrued the term "budget" as it is used in Indiana Code § 6-1.1-17-20.3(a)(2) to mean the "net" rather than the "gross" budget. (See Pet'r Br. at 14-15.)

4

Second, the Library claims that the DLGF erred in concluding that its 2018 proposed budget exceeded the 2018 AVGQ because the DLGF's method of determining its annual "percentage increase" is inconsistent with Indiana Code § 6-1.1-17-20.3(a)(2) and Indiana Code § 6-1.1-18.5-2. (See Pet'r Br. at 15-17.) Third, the Library maintains that the DLGF's final determination reducing its 2018 proposed budget conflicts with the requirements of Indiana Code § 6-1.1-17-20.3(f). (See Pet'r Br. at 19-20.)

**A.**

Indiana Code § 6-1.1-17-20.3 provides the procedures for establishing and reviewing the budgets, tax rates, and tax levies for public libraries with governing boards that are primarily appointed, not elected. See generally IND. CODE § 6-1.1-17-20.3 (2018). Specifically, Indiana Code § 6-1.1-17-20.3(a)(2) provides rules to limit the percentage increase in the property tax levy from year to year if the "percentage increase in the proposed budget for the taxing unit for the ensuing calendar year [] is more than the result of: (A) the [AVGQ][4] determined under IC 6-1.1-18.5-2 for the ensuing calendar year; minus (B) one (1)." I.C. § 6-1.1-17-20.3(a)(2) (emphasis added).

The Library first reasons that the DLGF acted contrary to law when it considered the allowable percentage increase in its proposed budget by comparing its 2018 proposed net budget to its 2017 certified net budget because the word "budget" as used in Indiana Code § 6-1.1-17-20.3(a)(2) refers to the proposed gross budget. (See Pet'r Br. at 14-15.) The Library maintains that if the DLGF had compared its 2018 proposed gross budget to its 2017 gross budget, the percentage increase from year to year would be within the AVGQ under Indiana Code § 6-1.1-18.5-2. (See Pet'r Br. at 15.)

---

[4] The AVGQ is calculated to determine "a civil taxing unit's maximum permissible ad valorem property tax levy for an ensuing calendar year." I.C. § 6-1.1-18.5-2(b).

5

The Court's primary goal in construing Indiana Code § 6-1.1-17-20.3(a)(2) is to determine and implement the intent of the Legislature in enacting the statute. See DeKalb Cty. E. Cmty. Sch. Dist. V. Dep't of Local Gov't Fin., 930 N.E.2d 1257, 1260 (Ind. Tax Ct. 2010). The best evidence of the Legislature's intent can be found in the statutory language itself. See, e.g., Hamilton Square Inv., LLC v. Hamilton Cty. Assessor, 60 N.E.3d 313, 317 (Ind. Tax Ct. 2016), review denied. In this case, however, the statutory language does not reveal whether the word "budget" means the gross or net budget. See I.C. § 6-1.1-17-20.3(a)(2). Accordingly, the Court must apply other well-established rules of construction to ascertain the meaning of "budget" under Indiana Code § 6-1.1-17-20.3(a)(2). See, e.g., City of Carmel v. Steele, 865 N.E.2d 612, 618 (Ind. 2007) (providing that ambiguous statutes are subject to judicial construction).

One of those rules is that "[s]tatutes related to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious result when possible." Lake Cty. Assessor v. Amoco Sulfur Recovery Corp., 930 N.E.2d 1248, 1254-55 (Ind. Tax Ct. 2010) (citation omitted), review denied. Here, a statute within the same chapter that addresses the same subject matter demonstrates that the word "budget" refers to the net budget because it requires an estimated budget to be formulated "after taking into account" property tax credits. See IND. CODE § 6-1.1-17-3(a) (2018) (emphasis added). It therefore follows that the proposed "budget" as used in Indiana Code 6-1.1-17-20.3(a)(2) cannot mean the gross budget because property tax caps are only taken into account in a net budget. Consequently, the Library has not established that the DLGF's final determination is contrary to law on this basis.

**B.**

Second, the Library explains that the DLGF's method for determining its annual "percentage increase," which consisted of rounding to five decimal places rather than three, is contrary to Indiana Code § 6-1.1-18.5-2(b). (See Pet'r Br. at 15-17 (citing I.C. § 6-1.1-18.5-2(b).) The Library explains that if the DLGF had rounded to three decimal places instead of five, its 2018 proposed budget would not have exceeded the AVGQ minus one and should have been certified by the DLGF's 2018 budget order. (See Pet'r Br. at 16-17.)

A DLGF final determination is contrary to law if it violates a statute, constitutional provision, legal principle, or rule of substantive or procedural law. See Clark Cty. Assessor v. Meijer Stores LP, 119 N.E.3d 634, 641 (Ind. Tax Ct. 2019). Here, however, there is no statutory requirement that the DLGF determine the percentage increase by rounding to three decimal places: that rounding only applies to calculating the AVGQ. See I.C. § 6-1.1-18.5-2(b). Consequently, the DLGF did not act contrary to law and cannot be reversed on this basis.

**C.**

Third, the Library reasons that the DLGF acted contrary to law by failing to continue "the [Library's] most recent annual appropriations and annual tax levy" as its 2018 budget. (See Pet'r Br. at 19-20.) See also I.C. § 6-1.1-17-20.3(f) (providing that if a public library proposes a budget in excess of the maximum limit without timely approval by "the appropriate fiscal body . . . the most recent annual appropriations and annual tax levy of that public library are continued for the ensuing budget year"). Specifically, the Library claims that the DLGF's 2018 budget order differs from the Library's 2017 budget order

7

"by reducing the Rainy Day Fund appropriation by $12,143, by increasing the General Fund appropriation by $12,143, and by reducing the levy by $814." (Pet'r Br. at 19.)

The sole information regarding the comparison between the 2017 and 2018 budget orders is found in the Library's argument in its Petition and brief. Attorney argument, however, is not evidence. See Sahara Mart, Inc. v. Indiana Dep't of State Revenue, 114 N.E.3d 36, 45 (Ind. Tax Ct. 2018) (stating that an attorney's argument does not constitute evidence). The failure of the DLGF to continue the 2017 budget order for 2018 would be contrary to Indiana Code § 6-1.1-17-20.3(f), but the Court cannot find evidence in the record that details the 2017 budget order for comparison. Accordingly, the Court cannot reverse the DLGF's final determination on these grounds.

## II. Abuse of Discretion

The Library contends that the DLGF's final determination constitutes an abuse of discretion for two reasons. First, the Library maintains that the DLGF abused its discretion by reducing the Library's 2018 proposed budget rather than exercising its statutory authority under Indiana Code § 6-1.1-18.5-14(a) to correct a data error. (See Pet'r Br. at 20-22.) The Library further reasons that the DLGF abused its discretion in concluding that the Library intentionally adopted a proposed budget that exceeded the maximum allowable limit by merely $60. (See Pet'r Br. at 17-19.)

## A.

Indiana Code § 6-1.1-18.5-14 provides that:

> (a) The [DLGF] may order a correction of any advertising error, mathematical error, or error in data made at the local level for any calendar year if the [DLGF] finds that the error affects the determination of the limitation established by section 3 of this chapter or the tax rate or levy of a civil taxing unit. The [DLGF] may on its own initiative correct such an advertising error,

8

mathematical error, or error in data for any civil taxing unit.

(b) A correction made under subsection (a) for a prior calendar year shall be applied to the civil taxing unit's levy limitations, rate, and levy for the ensuing calendar year to offset any cumulative effect that the error caused in the determination of the civil taxing unit's levy limitations, rate, or levy for the ensuing calendar year.

IND. CODE § 6-1.1-18.5-14 (2018). The Library contends it is entitled to relief under Indiana Code § 6-1.1-18.5-14(a) because its 2018 proposed budget exceeded the AVGQ due to an inadvertent mistake (i.e., the adoption of a budget of $3,342,399 rather than a budget of $3,342,339), which constituted an "error in data." (See Pet'r Br. at 20-21.)

This Court has defined a correctible "error in data" as an objective error not an error in interpreting data (i.e., a subjective error). See Clark Cty. v. Indiana Dep't of Local Gov't Fin., 12 N.E.3d 1000, 1004 (Ind. Tax Ct. 2014) (providing that an error in data is readily fixable and easily observable to someone who did not make it). The Library's mistake in this case, inadvertently recording the wrong number, is not an error in data because it is not easily observable to someone who did not make it. Accordingly, the Court cannot find that the DLGF abused its discretion by not using its authority to correct an error in data under Indiana Code § 6-1.1-18.5-14(a).

**B.**

Finally, the Library explains that the DLGF abused its discretion by inflicting a disproportionate financial consequence on the Library upon determining that it had exceeded the AVGQ by just $60, a de minimis amount. (See Pet'r Br. at 17-19.) Indeed, the Library points out that its $60 mistake elicited "an appropriation reduction in the budget for [its] General or operating fund of $85,426 (3.8% rounded) and a reduction in the revenue [it] may raise by its property tax levy for the General or operating fund of $65,584

9

(4.1% rounded)." (See Pet'r Br. at 18.)

"The de minimis doctrine is closely related to the idea of substantial performance, which teaches that minor irregularities that do not affect the finished product do not provide the basis for a lawsuit." D & M Healthcare, Inc. v. Kernan, 800 N.E.2d 898, 901 (Ind. 2003) (citation omitted). "One may view these doctrines [i.e., the de minimis and substantial compliance doctrines] as denying legal intervention where no significant injury is inflicted, at least for unintentional wrongs[.]" Id. (citation omitted). Thus, the de minimis rule "'is a rule of reason, a substantive rule that may be applied in all courts and all types of issues.'" Id. (citation omitted).

The DLGF has argued that the injury here is the "practical consequences" of the "dispute over tens of thousands of local public library budget and levy dollars." (See Resp't Opp'n Pet. Reversal Final Determination at 10.) Without more, however, higher levy dollars to fund the Library could be viewed as benefit just as easily as harm, particularly in light of the evidence that shows the Library would have received the higher levy but for its inadvertent mistake. (See, e.g., Cert. Admin. R. at 3-12.) While the Library did not strictly comply with the statutory requirement in Indiana Code § 6-1.1-17-20.3(a)(2), its unintentional $60 overage is so insignificant that it substantially complies. This conclusion is further supported by the significant harm to the Library that the loss of $85,426, a large percentage of its funding, would cause. Finding an abuse of discretion, the Court reverses the DLGF's final determination on these grounds.

**CONCLUSION**

For the foregoing reasons, the final determination of the DLGF is REVERSED. Accordingly, this matter is REMANDED to the DLGF for action consistent with this

10

opinion.